UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
01-CV-1112(JMR/FLN)

Great Southern Life Insurance Company )
)
v. ) ORDER
)
Agricultural Building Company Industries and Elinor Lucas )
)
and )
)
AMCORE Bank )

This interpleader action is before the Court on cross-motions for summary judgment brought by defendant Elinor Lucas and intervener AMCORE Bank.

Great Southern Life Insurance Company commenced this action, recognizing it owes someone life insurance proceeds upon the death of Robert W. Lucas. Its problem, of course, is a lack of clarity as to whom it should pay: claims were submitted by Elinor Lucas, Mr. Lucas's widow, and by his former business and employer, Agricultural Building Company Industries ("ABCI"). ABCI owes a substantial amount of money to AMCORE Bank. As ABCI's creditor, AMCORE intervened in this matter on October 29, 2001, claiming it is entitled to the proceeds.

Elinor Lucas seeks summary judgment on AMCORE's conversion, constructive fraud, and actual fraud claims. AMCORE seeks summary judgment on its constructive fraud claim. The Court finds Ms.

MAY 2002
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD MAY 1 2002

Lucas is entitled to summary judgment; AMCORE Bank's motion is, perforce, denied.

I. Background

Robert Lucas and Charles Weikel were the sole shareholders of ABCI and its predecessor, Agricultural Holding Company, Inc. In 1994, the company obtained a $500,000 life insurance policy, No. 35-09410120, on Robert Lucas from Ohio Life, Great Southern Life's predecessor. Agricultural Holding Company was the owner and named beneficiary of the policy.

Agricultural Holding Company's successor, ABCI, suffered a series of financial setbacks. As a result, it ceased paying the policy's premiums after April, 1998. On February 1, 2000, Ohio Life sent ABCI a "Grace Period Notice," indicating the policy was in its grace period and would lapse unless a $190 payment was made by April 16, 2000. The notice also showed the policy's current fund value was $68. By letter and personal check dated March 30, 2000, Mr. Lucas made the $190 payment, and indicated ABCI would transfer the policy's ownership to him the following day.

On March 31, 2000, Mr. Weikel signed a form transferring ownership of the policy from ABCI to Robert Lucas. Mr. Weikel now claims he signed the transfer form believing he was transferring a different life insurance policy based on representations by Mr. Lucas. Mr. Lucas did not pay ABCI for the policy transfer. When the policy was transferred, ABCI was in financial difficulty, and

its major creditor was AMCORE Bank. On April 1, 2000, Mr. Lucas changed the policy's beneficiary from ABCI to Elinor Lucas. Mr. Lucas died on April 6, 2000, from a self-inflicted accidental gunshot wound. The coroner examined the circumstances of the death and found Mr. Lucas's death was accidental.

II. Claims

ABCI and AMCORE originally claimed Mr. Lucas fraudulently induced Mr. Weikel to transfer ownership of the policy. Following Ms. Lucas's previous motion for summary judgment, both ABCI and AMCORE agreed to dismiss these claims.

ABCI has entirely abandoned any claim it had to the life insurance proceeds. AMCORE bases its remaining claim on theories of conversion, as well as constructive and actual fraud under Minnesota's fraudulent transfer statute. Ms. Lucas seeks summary judgment against AMCORE on all its claims. AMCORE seeks summary judgment against Ms. Lucas on its constructive fraudulent transfer claim.

Great Southern Life has placed the life insurance proceeds with the court, in accord with Rule 1335(a)(2) of the Federal Rules of Civil Procedure ("Fed. R. Civ. P.").

III. Discussion

A. Summary Judgment Standard

Summary judgment is appropriate when no material facts are in dispute and the moving party is entitled to judgment as a matter of

law. Fed. R. Civ. P. 56; Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 246 (1986). The party opposing summary judgment may not rest upon the allegations in its pleadings, but must produce significant probative evidence demonstrating a genuine issue for trial. See Fed. R. Civ. P. 56(e); Liberty Lobby, 477 U.S. at 248-49; see also Hartnagel v. Norman, 953 F.2d 394, 395-96 (8th Cir. 1992). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Liberty Lobby, 477 U.S. at 247-48. If the opposing party fails to carry that burden, or fails to establish the existence of an essential element of its case, on which that party will bear the burden of proof at trial, summary judgment should be granted. See Celotex, 477 U.S. at 322.

B. Conversion Claim

Ms. Lucas moves for summary judgment on AMCORE's conversion claim. AMCORE does not oppose the dismissal of this claim. Accordingly, the motion for summary judgment on this claim is granted.

C. Fraudulent Transfer

AMCORE claims both constructive and actual fraud under Minnesota's statute prohibiting fraudulent transfers.

1. Constructive Fraud

In accord with the Uniform Fraudulent Transfer Act, Minnesota law provides:

> A transfer made or obligation incurred by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation.

Minn. Stat. § 513.45(a). Therefore, constructive fraud requires proof of (1) a transfer, (2) a prior claim, (3) no "reasonably equivalent value," and (4) debtor insolvency. Ms. Lucas claims AMCORE cannot establish either that (1) a transfer occurred, or (2) the debtor did not receive a reasonably equivalent value. The Court agrees.

a. Transfer

A "transfer" encompasses "every mode . . . of disposing of or parting with an asset or an interest in an asset." Minn. Stat. § 513.41(12). An "asset" is "property of a debtor." Minn. Stat. § 513.41(2). "Property" is "anything that may be subject of ownership." Minn. Stat. § 513.41(10).

The Court finds that proceeds of a life insurance policy are not "property" subject to Minnesota's fraudulent transfer statute. The Court does so, recognizing that Minnesota's Supreme Court has not spoken on the issue. Other jurisdictions, however, have so construed the Uniform Fraudulent Transfer Act's predecessor, the

Uniform Fraudulent Conveyance Act. See Equitable Life Ins. Co. v. Hitchcock, 258 N.W. 214, 216 (Mich. 1935) (holding "an insurance policy represents a mere expectancy dependent upon the performance of certain conditions and the happening of a certain contingency" and is not "property" subject to Michigan's Fraudulent Conveyance Act); First Wisconsin Nat'l Bank of Milwaukee v. Roehling, 269 N.W. 677, 680 (Wisc. 1937) (reasoning "[t]he Uniform Fraudulent Conveyance Act evidences no intent to protect the creditors against the loss by transfer of an interest so speculative, so remote, and so completely within the power of the insured to destroy"). Moreover, under Minnesota law, an "asset" does not include "property to the extent it is generally exempt under nonbankruptcy law," Minn. Stat. § 513.42(2)(ii), and life insurance proceeds are exempt from the claims of the insured's creditors, Minn. Stat. § 61A.12, subd. 2.

Therefore, based on these teachings, the Court finds it highly probable that the Minnesota Supreme Court would resolve this issue in accord with its sister courts, finding that life insurance proceeds are not property subject to the Uniform Fraudulent Transfer Act. As a result, no transfer of property occurred as required by the statute.

b. Reasonably Equivalent Value

The Uniform Fraudulent Transfer Act is concerned with transfers that are not of reasonably equivalent value. Pertinent

to this case, courts have held that the reasonably equivalent value of a transferred life insurance policy is its cash surrender value, not its proceeds. See, e.g., Hitchcock, 258 N.W. at 216. Here, at the time of transfer, the policy in question had a current fund value of $68, and was about to lapse. The Court finds that Mr. Lucas's agreement to bring the policy current and pay future premiums constitutes reasonably equivalent value for the policy.

Accordingly, because AMCORE cannot establish that, first, a transfer occurred or, second, the debtor did not receive a reasonably equivalent value, the Court grants summary judgment to Ms. Lucas on AMCORE's constructive fraud claim.

2. Actual Fraud

Under Minnesota law,

> A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation . . . with actual intent to hinder, delay, or defraud any creditor of the debtor . . . .

Minn. Stat. § 513.44(a)(1).

AMCORE's actual fraud claim, like its constructive fraud claim, fails as a matter of law for lack of a transfer of property for the reasons set forth above.

Notwithstanding this determination, the Court has reviewed the evidence proffered in these summary judgment motions, and considered it in the light most favorable to AMCORE. See

Radaszewski v. Telecom Corp., 981 F.2d 305, 310 (8th Cir. 1992); Fed. R. Civ. P. 56. After doing so, the Court finds there is simply no evidence to prove Mr. Lucas acted with actual intent to defraud, hinder, or delay.

On the evidence before this Court, no reasonable jury could find actual intent. To the contrary, the evidence suggests that by assuming premium payment obligations, Mr. Lucas preserved a lapsing life insurance policy for the benefit of his family. He certainly died shortly thereafter, but the occurrence of a tragic accident is not an indicia of fraud.

AMCORE also asserts that "traditional badges of fraud," as codified in Minnesota's fraudulent transfer statute, are present in this case.[1] According to AMCORE, they provide circumstantial

---

[1]Minnesota's statute prohibiting fraudulent transfers lists several factors that may be considered in determining actual intent:

(1) the transfer or obligation was to an insider;
(2) the debtor retained possession or control of the property transferred after the transfer;
(3) the transfer or obligation was disclosed or concealed;
(4) before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit;
(5) the transfer was of substantially all the debtor's assets;
(6) the debtor absconded;
(7) the debtor removed or concealed assets;
(8) the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred;
(9) the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred;
(10) the transfer occurred shortly before or shortly after a substantial debt was incurred; and
(11) the debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.

Minn. Stat. § 513.44(b).

evidence suggesting Mr. Lucas's fraudulent intent. AMCORE emphasizes the fact that the insurance policy was transferred to an insider (factor 1), its view that the consideration paid was not reasonably equivalent to the policy's value (factor 8), and the debtor's insolvency (factor 9).

The Court rejects this argument. Doubtless, Mr. Lucas and Mr. Weikel were "insiders" -- they were virtually the whole company. Any transactions between either of them and their business were, therefore, insider transactions. And there is no question the company was insolvent; that's why it owed money to AMCORE. But the fulcrum of the argument fails: as explained above, under Minnesota law, and in fact, the money paid to purchase this policy was "reasonably equivalent" to the policy value. AMCORE's actual fraud argument, when clearly analyzed, is nothing more than a recasting of its previously rejected fraudulent transfer claim.[2] The argument could not be sustained before, and it fails again.

Finally, the Court declines to entertain AMCORE's suggestions that the timing and circumstances of Mr. Lucas's death indicate fraudulent intent. Mr. Lucas's death was considered by the coroner, who ruled it accidental. The mere fact that his accidental death happened closely in time to the life insurance

[2]AMCORE had previously claimed Mr. Lucas falsely represented to Mr. Weikel that the documents Weikel was signing transferred a different life insurance policy than the one at issue. AMCORE has dropped this fraudulent inducement claim, however, and it has been dismissed with prejudice.

policy transfer does not make the transfer fraudulent with respect to AMCORE.

In summary, AMCORE has not met its burden in opposing a summary judgment motion. It has failed to produce significant probative evidence demonstrating a genuine issue for trial. As a result, Ms. Lucas is entitled to judgment as a matter of law, and her motion is granted.

III. Conclusion

For the foregoing reasons IT IS ORDERED that:

1. Ms. Lucas's motion for summary judgment is granted. [Docket No. 52.]

2. AMCORE Bank's motion for summary judgment is denied. [Docket No. 59.]

Dated: April 30, 2002

JAMES M. ROSENBAUM
United States Chief District Judge

# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

## CIVIL NOTICE

The purpose of this notice is to summarize the time limits for filing with the District Court Clerk's Office a Notice of Appeal to the Eighth Circuit Court of Appeals from a final decision of the District Court in a civil case.

- ***This is a summary only. For specific information on the time limits for filing a Notice of Appeal, review the applicable federal civil and appellate procedure rules and statutes.***

Rule 4(a) of the Federal Rules of Appellate Procedure (Fed. R. App. P.) requires that a Notice of Appeal be filed within:

1. Thirty days (60 days if the United States is a party) after the date of "entry of the judgment or order appealed from;" or

2. Thirty days (60 days if the United States is a party) after the date of entry of an order denying a timely motion for a new trial under Fed. R. Civ. P. 59; or

3. Thirty days (60 days if the United States is a party) after the date of entry of an order granting or denying a timely motion for judgment under Fed. R. Civ. P. 50(b), to amend or make additional findings of fact under Fed. R. Civ. P. 52(b), and/or to alter or amend the judgment under Fed. R. Civ. P. 59; or

4. Fourteen days after the date on which a previously timely Notice of Appeal was filed.

If a Notice of Appeal is not timely filed, a party in a civil case can move the District Court pursuant to Fed. R. App. P. 4(a)(5) to extend the time for filing a Notice of Appeal. This motion must be filed no later than 30 days after the period for filing a Notice of Appeal expires. If the motion is filed after the period for filing a Notice of Appeal expires, the party bringing the motion must give the opposing parties notice of it. The District Court may grant the motion, but only if excusable neglect or good cause is shown for failing to file a timely Notice of Appeal.